| | |
|---|---|
| KLESTADT & WINTERS, LLP | Hearing Date: June 26, 2014 |
| Tracy L. Klestadt | Hearing Time: 3:00 pm |
| Brendan M. Scott | |
| 570 Seventh Avenue, 17th Floor | |
| New York, New York 10018 | |
| Tel: (212) 972-3000 | |
| Fax: (212) 972-2245 | |

*Attorneys for 37 Avenue Realty Associates LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| GOLDEN LAND LLC, | Case No. 1-14-42315-(nhl) |
| Debtor. | |

**MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 543(d)(1) EXCUSING COMPLIANCE WITH TURNOVER REQUIREMENT AND AUTHORIZING CUSTODIAN TO REMAIN IN POSSESSION OF MORTGAGED PREMISES**

**TO: THE HONORABLE NANCY HERSHEY LORD,
    UNITED STATES BANKRUPTCY JUDGE:**

The motion of 37 AVENUE REALTY ASSOCIATES LLC ("37 Avenue Realty"), by its undersigned counsel, seeking an order pursuant to 11 U.S.C. § 543(d)(1) excusing compliance with the turnover requirements of subsections (a), (b), or (c) of 11 U.S.C. § 543 and permitting the current custodian (a state court receiver) to remain in possession and control of the mortgaged premises, respectfully sets forth and alleges as follows:

**OVERVIEW OF MOTION**

1. This is a single asset real estate case, although incorrectly not designated as such in the petition filed herein, where receiver Lawrence Litwack, Esq. (the "Receiver"), appointed in connection with a certain mortgage foreclosure action pending in the

Supreme Court of the State of New York, County of Queens (the "Foreclosure Action"), has been in possession of the subject premises (commercial investment property, consisting of four commercial condominium units, twenty-nine parking spaces, and eleven residential condominium units contained in the building known as the American-Chinese Tower Condominium and located at 142-21/27 37th Avenue, Queens, New York) (the "Premises"), effectively operating and maintaining the same on behalf of the secured creditor and mortgagor, 37 Avenue Realty, continuously for one year prior to the commencement of this case (the "Receivership").

2. Prior to the initiation of the Receivership, the Debtor had been in possession of the Premises, collecting the rents and profits from the Premises. Despite doing so, however, the Debtor's manager(s) grossly mismanaged its affairs and failed to use those funds to pay its mortgage, real estate taxes, and water/sewer bills; to maintain a hazard insurance policy for the Premises; or to otherwise maintain the value and integrity of the Premises.

3. This case was obviously commenced solely as a last ditch effort to stay the sale of the mortgaged Premises pursuant to a previously entered judgment of foreclosure and sale entered in the foreclosure action. The Premises would have been sold at public auction on May 9, 2014, had the petition herein not been filed on May 8, 2014.

4. The Debtor neglected and mismanaged the subject real estate prior to the appointment of the Receiver and is not competent and cannot be trusted to effectively manage or maintain the same for the benefit of the creditors, pending the administration of this case. The current custodian, however, the Receiver appointed in the Foreclosure Action, has been in possession of the Premises for a full year, and has proven that he can

manage, maintain and preserve the Premises for the benefit of the interested parties. Accordingly, the status quo should be maintained pending the administration of this case by permitting him to remain in possession and control.

### Procedural Background in this Court

5. On May 8, 2014 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 11 of Title 11 of the United State Code (the "Bankruptcy Code"). No schedules, list of creditors or statement of financial affairs were filed with the Petition. On May 16, 2014, in apparent response to an order to show cause of this Court directing that Debtor show cause "why the case should not be dismissed for the debtor's failure to file mailing matrix", the Debtor filed its list of creditors specifying three creditors. Although the Debtor did not specify for each creditor whether it was "secured" or "unsecured", upon information and belief all three are in fact secured creditors. Based upon the Debtor's filing of its matrix, the show cause order was marked off on May 20, 2014. A status conference is scheduled for June 26, 2014, and the first creditors' meeting pursuant to section 341 of the Bankruptcy Code is scheduled for June 16, 2014. The United States Trustee has not appointed an official committee of unsecured creditors in this case.

### State Court History

6. As collateral security for certain loans made to Debtor by Chinatrust Bank (U.S.A.) ("Chinatrust") on June 20, 2007 ("Mortgage 1") and May 2, 2008 ("Mortgage 2") respectively, the Debtor executed and delivered to Chinatrust certain mortgages (the "Mortgages"), collectively encumbering the Premises as described in said mortgages and located at 142-21/27 37th Avenue, Queens, New York. A copy of Mortgage 1 and of

Mortgage 2 is annexed to the accompanying Declaration of Glenn Rodney ("Rodney Declaration") as Exhibit "A". In addition to executing the Mortgages, on June 20, 2007 ("Note 1") and on May 2, 2008 ("Note 2") respectively, Debtor executed certain promissory notes, promising to repay each of the two loans secured by the Mortgages (the "Notes"). A copy of Note 1 and of Note 2 is annexed to the Rodney Declaration as Exhibit "B."

7. In connection with each of the two loans it obtained from Chinatrust, the Debtor also executed an Assignment of Leases and Rents (the "Assignment of Leases and Rents"). A copy of each Assignment of Leases and Rents is annexed to the Rodney Declaration as Exhibit "C."

8. All of the units comprising the Premises were constructed and developed as part of a single condominium project. Affidavit of Lawrence Litwack, Esq., sworn to on the 28th day of May 2014 ("Litwack Affidavit"), ¶ 6. The Assignment of Leases and Rents gave the mortgagee an absolute right to take possession of the Premises and to collect the rents and profits for its benefit in the event of a default by the Debtor in its duties and obligations under the Notes and Mortgages. In addition, the Mortgages gave the mortgagee a right to have a receiver appointed over the rents and profits of the Premises in the event of the Debtor's default under the terms and conditions of the Notes and Mortgages. In the Mortgages, the Debtor expressly consented to the appointment of a receiver in such event. See Rodney Declaration, Exhibit A, Mortgage 1, § 2.01, and Mortgage 2, § 2.01.

9. On March 1, 2012, the Debtor defaulted in its obligations under the Notes and Mortgages, and on November 23, 2012, Chinatrust commenced the Foreclosure Action,

to foreclose upon the Mortgages based upon the Debtor's default in its payment of monthly principal and interest in accordance with the Notes and Mortgages.

10. Even absent this default, the entire debt owed to 37 Avenue Realty under the Notes is due and payable in full on June 20, 2014, the "maturity date" fixed by the Notes.

11. After the commencement of the Foreclosure Action, the Mortgages and the Assignment of Leases and Rents were duly assigned from Chinatrust to 37 Avenue Realty, and the Notes were endorsed over and physically delivered to 37 Avenue Realty. A copy of the assignment for each of the Mortgages, the assignment for the Assignment of Leases and Rents, and the allonge attached to each of the Notes is annexed to the Rodney Declaration as Exhibit "D".

12. Thereafter, based upon 37 Avenue Realty's status as owner and holder of the Notes and Mortgages, by order of the State Court dated July 1, 2013 and entered July 5, 2013, 37 Avenue Realty was formally substituted in place and stead of Chinatrust, as plaintiff in the Foreclosure Action. A copy of that order is annexed to the Rodney Declaration as Exhibit "E".

13. Prior to the assignment of the Mortgages, Chinatrust exercised its right to have a receiver appointed over the rents and profits of the Mortgaged Premises. By order dated August 17, 2012, and entered August 23, 2012 (the "Receivership Order"), the State Court granted Chinatrust's application and Mr. Litwack, of 4240 Bell Boulevard, Bayside, New York 11361 was appointed Receiver. A copy of the Receivership Order is annexed to the Rodney Declaration as Exhibit "F".[1]

---

[1] 37 Avenue Realty is the current holder of the Assignment of Leases and Rents and, absent the application of the automatic stay, would have an absolute right to directly take possession of the Mortgaged Premises and collect the rents and profits for its benefit. Rather than taking possession

14. Pursuant to the Receivership Order, the Receiver took possession of the premises and its rents and profits on or about May 8, 2013, and has remained in possession and control thereof since that time. Litwack Affidavit, ¶ 4.

15. By order dated September 5, 2013, the State Court, *inter alia*, appointed a referee to hear and compute the amount due under the Notes and Mortgages. The referee made his computation and rendered his report, and on February 28, 2014, a judgment of foreclosure and sale was issued and entered in the Foreclosure Action (the "Judgment"). A copy of the Judgment is annexed to the Rodney Declaration as Exhibit "G". In excess of $13 million remains due and owing by the Debtor to 37 Avenue Realty as of the Petition Date.

16. In accordance with the Judgment, the Premises was advertised for auction and sale. The sale was noticed and scheduled for May 9, 2014. On the evening of May 8, 2014, the Debtor commenced this case by filing the Petition and stayed the sale of the Premises.

## ARGUMENT

17. 11 U.S.C. §543(d)(1) provides that a bankruptcy court:

> may excuse compliance with subsection (a),(b)or (c) of this section if the interest of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property.

18. The definition of "custodian" under 11 U.S.C §101(11) explicitly includes a receiver.

---

directly, however, 37 Avenue Realty proceeded in the State Court to exercise its rights by and through the Receiver.

19. In exercising its discretion to determine whether the interest of creditors would be better served by excusing compliance, this Court may consider numerous factors. As the District Court in In re Dill, 163 B.R. 221, 225 (E.D.N.Y. 1994), explained:

> A Court considering whether to exercise its discretion under section 543(d)(1) may consider several factors indicative of whether the interests of creditors would be better served. These factors have evolved to include: (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the turnover property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; (4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and (5) the fact that the bankruptcy automatic stay has deactivated the state court receivership action. *See Constable Plaza Associates*, 125 B.R. at 103–04 (citing cases); *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332 (Bankr.S.D.Ohio 1990); *Powers Aero Marine Services*, 42 B.R. at 544–45; *In re CCN Realty Corp.,* 19 B.R. 526, (Bankr.S.D.N.Y.1982). The interests of the debtor, however, are not part of the criteria considered when applying section 543(d)(1). See 4 *Collier on Bankruptcy*, ¶ 543.05 at 543–12 (15th Ed.1993) ("section 543(d)(1) does not require an analysis of the interests of the debtor").

20. It is submitted that in the case at bar these factors weigh heavily in favor of maintaining the status quo pending the administration of this case. Here, the Receiver has been in possession of the Premises for a full year, and his activities as Receiver have been instrumental in helping to preserve the Premises for the benefit of the creditors, and, upon information and belief, there are no preferential transfers to be avoided.

21. The Debtor has identified three creditors in its filed mailing matrix -- the NYC Department of Finance, American Chinese Condominium ("American Chinese'), and 37 Avenue Realty, none of whom would be better protected by supplanting the Receiver. American Chinese is the condominium association for the Premises. Upon information and belief, the individual signing the Petition on behalf of the Debtor, Hong Qin Jieng, is the wife of Debtor's managing member Xi Liang Liu, and is the head of

American Chinese. American Chinese is presumably listed as a creditor based upon common charges owing for the condominium units still being held in the name of Debtor. American Chinese is a named defendant in the Foreclosure Action and its interest in the Mortgaged Premises, if any, is junior and subordinate to that of 37 Avenue Realty and is subject to the Judgment. The NYC Department of Finance is presumably named because of delinquent real property taxes and/or water and sewer charges. The interests of the NYC Department of Finance have been addressed by the Receiver. As set forth more fully below, over the past year the Receiver has brought the real property taxes current and has been making regular payments to the City of New York for delinquent water and sewer charges pursuant to an *in rem* agreement. 37 Avenue Realty is the overwhelmingly largest creditor, holding a claim secured by the Premises in excess of $13 million as of the Petition Date, and is the sole assignee of the rents and profits from the Premises.

22. Immediately prior to the initiation of the Receivership, the Debtor had allowed real estate tax arrears in excess of $55,000 and water/sewer arrears in excess of $60,000 to accrue against the Premises, had failed to have in place a hazard insurance policy for the Premises, and had neglected necessary upkeep and maintenance on the Premises. In addition, the Debtor's management permitted the tenants of eight of the eleven residential units to fall seriously delinquent on their rent obligations without taking any legal action to protect the rental income. Furthermore, the Debtor entered into purported leases with certain related parties for conspicuously long lease terms (ten to twenty years for residential units) wherein rent was fraudulently fixed at rates substantially below fair market value for such leases. Litwack Affidavit, ¶ 7. All of the above adversely affected and seriously jeopardized 37 Avenue Realty's collateral.

23. Since the commencement and by virtue of the Receivership, however, matters concerning the Premises have significantly improved. Over the past year, all taxes have been brought current; an *in rem* agreement for the delinquent water/sewer charges has been entered into by the Receiver; an appropriate hazard insurance policy has been put in place; seven of the eight delinquent residential tenants have been removed from the Premises by eviction or agreement; a legal proceeding to evict the eighth delinquent residential tenant is pending; the tenants receiving the fraudulent, "below fair market value" leases have had their respective rights or interest, if any, in the Premises, foreclosed and extinguished by the Judgment; and the Receiver has been maintaining (and repairing as necessary) the mortgaged premises. Litwack Affidavit, ¶ 8.

24. Based on the foregoing, permitting the Receivership to remain in place pending the administration of this case under 11 U.S.C. §543(d)(1) is both necessary and appropriate.

WHEREFORE, 37 Avenue Realty respectfully requests that the Court grant this Motion and an order be issued pursuant to 11 U.S.C. § 543(d)(1) excusing compliance with the turnover requirements of subsections (a), (b) and (c) of 11 U.S.C. § 543 and permitting the current custodian (the Receiver) to remain in possession and control of the

Premises, and that such other and further relief be awarded as the Court may deem just and proper.

Dated: New York, New York
       May 28, 2014

                                KLESTADT & WINTERS, LLP

                                By:  /s/ Tracy L. Klestadt
                                    Tracy L. Klestadt
                                    Brendan M. Scott
                              570 Seventh Avenue, 17th Floor
                              New York, New York 10018
                              Tel:  (212) 972-3000
                              Fax:  (212) 972-2245

                              *Attorneys for 37 Avenue Realty Associates LLC*