DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDEKEHR, LLP
*Attorneys for the Debtor*
1 North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Erica Feynman Aisner, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                              Chapter 11
                                                    Case No. 14-42315 (NHL)

GOLDEN LAND LLC,

                             Debtor.
-------------------------------------------------------------X

## FIRST AMENDED DISCLOSURE STATEMENT

Golden Land LLC (the "Debtor") submits this First Amended Disclosure Statement

pursuant to Section 1125(b) of Title 11, United States Code, 11 U.S.C. §§ et seq. (the

"Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), in connection with its First Amended Chapter 11 Plan of Reorganization

dated October 8, 2014 (the "Plan") to all known holders of Claims against or Interests in the

Debtor in order to adequately disclose information deemed to be material, important and

necessary for the Debtor's creditors to make a reasonably informed judgment about the Plan.  A

copy of the Plan is attached hereto as Exhibit "A."

The Bankruptcy Court has not yet approved this Disclosure Statement in this chapter 11

case under Section 1125(b) of the Bankruptcy Code. A hearing to consider confirmation of the

Plan will be set at a later date. Under Section 1126(b) of the Bankruptcy Code, only Classes of

Allowed Claims that are "impaired" under the Plan, as defined by Section 1124 of the

Bankruptcy Code, are entitled to vote on the Plan. Generally, a Class is impaired if its legal,

contractual or equitable rights are altered or reduced under the Plan. Under the Plan, Classes 1, 2 and 3 are impaired and thus entitled to vote. The Class 4 Interest holders are unimpaired under the Plan and deemed to have accepted the Plan.

## I. INTRODUCTION

### A. Background

Golden Land LLC ("Debtor" or "Golden Land") is a limited liability company organized under the laws of the State of New York and maintains an office at 142-23 37th Avenue, Unit 2E, Flushing, New York 11354.

The Debtor is the owner of certain real property located at 142-21/27 37th Avenue, Queens, New York (the "Premises"). The Premises is the principal or sole asset of this bankrupt estate. The Premises is commercial investment property, consisting of four commercial condominium units, twenty-nine parking spaces, and eleven residential condominium units contained in the building known as the American-Chinese Tower Condominium and located at 142-21/27 37th Avenue, Queens, New York (the "Property").

The Debtor is the sponsor of the Premises and was originally financed by Chinatrust Bank. The Debtor constructed the building in 2003 and sold 19 units over the next several years before falling into default with its lender at the time.

Chinatrust thereafter commenced a foreclosure action in 2012, and sometime shortly thereafter sold the loan and underlying loan documents to 37 Avenue Realty Associates LLC ("37 ARA"), an entity wholly unrelated to or affiliated with the Debtor or any of its principals or insiders.

In the foreclosure action, Lawrence Litwack (the "Receiver") was appointed receiver of the Premises and has been in exclusive possession and control of the Premises, managing and maintaining the same since May 8, 2013 pursuant to an order of the Supreme Court of the State of New York, County of Queens, Index No.: 10438/ 2012, dated August 17, 2012, and entered August 23, 2012 (the "Receivership Order"). Pursuant to the Receivership Order, the Receiver took possession and control of the Premises and commenced his duties as receiver, including initiating efforts to collect the rents and profits generated from the Premises, on or about May 8, 2013, and has remained in possession and control thereof since that time.

After prevailing on its motion for summary judgment, on February 28, 2014 37 ARA, as substituted plaintiff for Chinatrust Bank, obtained entry of a judgment of foreclosure. As of the Petition Date, 37 ARA is owed the aggregate sum of $13,368,147. 37 ARA believes the Property has a value in excess of $15 million.

**B. Commencement of the Chapter 11 Case**

On May 8, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.

On July 9, 2014 , this Court entered an order [EFC Docket No. 17] pursuant to 11 U.S.C. §543(d)(1) excusing the Receiver from compliance with the turnover requirements of subsections (a), (b) and (c) of 11 U.S.C. § 543, and directed that the Receiver remain in possession and

control of the Premises pending further order of the Court. The Court also enlarged the scope of the receivership for the benefit of all of Debtor's creditors.

## C.  Employment of the Debtor's Professionals

Shortly after being retained to substitute for Debtor's initial attorney, Xiangan Gong, the Petition Date, the Debtor filed an application to retain DDWWW as its bankruptcy counsel. An order granting the application  was entered by the Court on September 6, 2014.

## D. Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs

On July 21, 2014 37 ARA filed Schedules of Assets and Liabilities, together with a Statement of Financial Affairs (collectively, the "Schedules"). The Schedules are available on the Bankruptcy Court's website: www.nyeb.uscourts.gov (log-in and password required) or from counsel for the Debtor upon written request.

## E. Establishment of a Claims Bar Date and Claims Process

37 ARA has heretofore filed a motion and obtained an order seeking to establish October 14, 2014 as the last date by which creditors may file proofs of claim in the Chapter 11 case (the "Bar Date").

## F. The Hopeful Refinance or Sale of the Property

The Debtor has commenced to market the Property for sale and/or refinance. The Debtor is optimistic that a sale or refinance can and will be achieved shortly.

## G. Post-Petition Operations

The Receiver has continued to manage the Property which includes maintenance of the Property.

## II.  THE PLAN OF REORGANIZATION

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT AND CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INTELLIGENT JUDGMENT CONCERNING IT. THE PLAN GOVERNS OVER ANY DISCREPANCY IN THIS SUMMARY.

The Plan will be funded with the net proceeds from the refinance or sale of the Debtor's Property. The sale of the Debtor's Property (as more fully discussed in Article IV of the Plan), following Confirmation of the Plan, shall not be subject to any stamp or similar transfer tax pursuant to 11 U.S.C. § 1146(a) because it will be sold pursuant to the Plan.

**A.      Treatment of Unclassified Claims Under the Plan**

1.      <u>Allowed Administrative Claims other than Claims of Professionals</u>:  To the extent that any such Claims should exist, they shall be paid in the ordinary course and according to the terms and conditions of the respective contracts underlying such Claims.

2.      <u>Allowed Administrative Claims of Professionals</u>:  The Allowed Administrative Claims of DelBello Donnellan Weingarten Wise & Wiederkehr, LLP ("DDW"), shall be paid in full, in cash, upon the later of (i) allowance by the Court pursuant to Section 330 of the Code or (ii) the Effective Date, unless otherwise agreed by such professional, from the proceeds of either (a) refinance or sale by the Debtor other than at the Auction or (b) the Auction. Notwithstanding the foregoing, in the event that the Class 1 claimholder is the successful purchaser at the Auction or the Class 1 Claim is not paid in full,  DDW's net unpaid Administrative Claim shall be capped at $35,000.  The only Allowed Administrative Professional Claims are those of Debtor's counsel, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP. The Allowed Administrative Claim of DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, net of pre-petition retainer, is

expected to be approximately $45,000 (which is estimated through the Confirmation Date).

3.    <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717 prior to confirmation shall be paid in full by the Effective Date in accordance with the other provisions of this Plan. In the event that the Class 1 claim holder or a third party is the successful bidder at the Auction, such party shall be responsible for the payment of all outstanding United States Trustee Fees. In the event that the Debtor refinances or sells the Property other than at auction, such fees shall be paid by the Debtor, in full, in cash, in such amount as they are incurred in the ordinary course of business by the Debtor.

4.    <u>Allowed Administrative Claims of the Receiver:</u> The Allowed Claims of the Receiver shall be paid in full from either (a) funds on hand with the Receiver or (b) the proceeds from refinance or  sale upon the later of (i) allowance by the State Court or (ii) the Sale Closing Date. In the event that the Class 1 claim holder or a third party is the successful bidder at the Auction, such party shall be responsible for the payment of all outstanding Receiver Fees. In the event that the Debtor refinances or sells the Property other than at auction, such fees shall be paid by the Debtor, in full, in cash, in such amount as they are incurred in the ordinary course of business by the Debtor.  Such Claims, including the Claims of the Receiver's managing agent, total approximately $41,750.

5.    <u>Allowed Priority Claims</u>:  The Debtor, or the successful bidder at auction, as applicable, shall pay, in full and in cash, Allowed Priority Claims (entitled to Priority pursuant to Section 507(a)(8) of the Bankruptcy Code) on the Sale Closing Date, including any administrative claims of the City of New York for, inter alia, water and sewer assessments, real estate taxes, violations and ECB judgments.

**B.      Treatment of Classes**

Class 1: the Allowed Secured Claim of 37 ARA, together with any unpaid interest, costs and reasonable attorneys' fees accrued thereon through the Sale Closing Date, estimated to be in the aggregate approximate amount of $13,500,000, shall be paid in full on the Sale Closing Date. Interest shall accrue on the 37 ARA Allowed Secured Claim at the rate of 9% per annum. In the event that a refinance or Sale Contract has not been closed upon on or before December 14, 2014, the Debtor must either (1) satisfy the Allowed Class 1 Claim in full, or (2) conduct a public auction no later than December 15, 2014 and close on such transaction on or before December 29, 2014. 37 ARA shall have the right to Credit Bid the full amount of the 37 ARA Allowed Secured Claim at an auction. The Debtor may obtain a thirty (30) day extension of either Sale Closing Date in the event it procures a commitment lender on or before December 8, 2014. The 37 ARA Allowed Secured Claim is impaired under the Plan under Section 1124 of the Bankruptcy Code.

Class 2: The Allowed Secured Claims of AC Tower Condominium, the Debtor's Condominium Association, estimated in the approximate amount of $233,500, shall be paid up to the Allowed amount of its Claims, on or before the Sale Closing Date, from the proceeds of either (a) a refinance or sale of the Property by the Debtor other than at the Auction or (b) the Auction, to the extent proceeds are available after payment of all non-classified, Administrative and Class 1 Claims in full. Class 2 Claims are impaired under the Plan and are entitled to vote on the Plan.

Class 3:  Allowed Unsecured Claims against the Debtor, if any, shall receive a pro rata portion of the remaining proceeds from the refinance and/or sale of the Property as may be the case, after the payment of all unclassified, Administrative, Priority, post-Effective Date legal fees

7

and Class 1 and 2 Claims, within ten (10) business days of the Sale Closing Date. In the event

that the 37 ARA Allowed Secured Claim is satisfied absent and in lieu of a sale of the Property

or Auction under this Plan, Allowed Class 3 Claims shall receive up to 100% of their Allowed

Claims, in cash, from the Debtor's operating cash flow except that all Allowed Class 3 Claims

must be paid in full upon any future sale or refinance of the Property. Class 3 Allowed Unsecured

Claims are impaired under this Plan. The Debtor believes there are no such Claims.

Class 4:  Allowed Interests shall retain their membership interests in the Debtor and shall

receive a pro rata portion of the remaining proceeds of the refinance or sale, after the payment of

all unclassified Claims and Class 1, Class 2 and Class 3 Allowed Claims and any post-Effective

Date legal fees and costs of the Debtor's estate, based upon the particular percentage of Interest

held.  Class 4 Interest holders are unimpaired and are deemed to have accepted the Plan under

Section 1124 and 1126 of the Bankruptcy Code.

**C.    Means For Execution And Implementation Of The Plan**

The Plan shall be funded with the cash on hand with the Receiver and the net proceeds of

refinance or sale of the Debtor's Property, as applicable. All distributions shall be made by the

Debtor in accordance with Article III herein, except that to the extent that a Claim becomes an

Allowed Claim after the Effective Date, within ten (10) days after the order allowing such Claim

becomes a Final Order.

Means for Implementation: Refinance, Sale or Auction.  Subject to the time deadlines set

forth in Article IV of the Plan, the Debtor shall market the Property and have the authority to

engage a real estate broker to assist in such efforts, in order to refinance or sell and liquidate the

Property for the highest and best price on or before the Sale Closing Date.  Upon Closing, the

proceeds of sale shall be distributed to holders of Claims and Interests in the same manner as

provided for in Article III herein.

In the event that the Closing pursuant to a refinance or Sale Contract has not timely occurred on or before December 14, 2014, the Debtor shall conduct a public auction of the Property on or before December 15, 2014. If the Debtor produces a written commitment letter from a bona fide lender on or prior to December 8, 2014, the auction and subsequent sale Closing Date(s) shall be automatically extended for 30 days.

The refinance or sale of the Property, whether pursuant to a loan agreement, Sale Contract or public auction shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any nature or kind (collectively, "Liens") and shall constitute a sale and assignment under §§ 105, 365, 363(b), 363(f), 1123(b)(4) and 1129 of the Code. Nothing set forth herein shall prevent a sale and assignment subject to certain Liens, provided that the purchaser and the holder of the Lien provides their consent in writing and the 37 ARA Allowed Secured Claim is paid in full.

At an auction conducted pursuant to subsections 4.2(b) of the Plan or otherwise, 37 ARA shall be entitled to and have the absolute right to Credit Bid the full amount of the 37 ARA Allowed Secured Claim. At an auction:

        (i)      If 37 ARA is the highest bidder, no deposit shall be required and the payment of the purchase price shall be deemed paid by 37 ARA by the Credit Bid except that 37 ARA shall also be responsible to pay, at Closing, any unpaid United States Trustee's Fees through the entry of a final decree closing the Chapter 11 Case, net unpaid professional fees of the Debtor capped at $35,000.00 or otherwise agreed to by 37 ARA, the Allowed Claims of the Receiver, and all Claims arising out of real estate taxes, ECB

judgments, water and sewer and other City of New York administrative Claims or assessments in full;

(ii)    If 37 ARA (or its nominee) is not the highest bidder, immediately following the auction, the Third Party Highest Bidder, shall execute the Sale Contract which shall provide, among other things, that:  (i) a Closing of the sale will occur on or, at the option of the successful bidder, before the twenty-fifth day after the date of the auction; and (ii) that time is of the essence with respect to the Closing date.

(iii)    Any successful bidder (other than 37 ARA) shall be responsible to pay, at Closing, any unpaid United States Trustee's Fees incurred through the entry of a final decree closing the Chapter 11 Case, net unpaid professional fees of the Debtor to the extent Allowed by the Bankruptcy Court, the Allowed Claims of the Receiver, Claims arising out of real estate taxes, ECB judgments, water and sewer and other City of New York administrative Claims or assessments, and the Class 1 Claim in full.

(iv)    If the Third Party Highest Bidder defaults under the Sale Contract, the Disbursing Agent will be entitled to keep the deposit for distribution under the Plan.

(v)    The Debtor shall reserve the second highest bidder. If 37 ARA (or its nominee) does not purchase the Property at the auction and the Third Party Highest Bidder is unable to close on the Closing date, the Disbursing Agent shall contact the second highest bidder and enter into a Sale Contract of the amount of such bid; provided however, that the Sale Contract with the second highest bidder shall comply with the provisions of the Plan, which sale must Close within twenty-five (25) days after execution of such contract.

The Debtor shall have the absolute right, through refinance, sale or otherwise, to satisfy the 37 ARA Allowed Secured Claim at any time, up to the commencement of the Auction. In the event that the Debtor satisfies the Class 1 Claim in full prior to the Auction, the Auction shall be deemed canceled.

Bid Procedures.  The Bid Procedures shall be as set forth in the Disclosure  Statement Approval Order, but shall include the following:

> The Property will be sold at the Auction to be held at the offices of Klestadt & Winters, LLP, 570 Seventh Avenue, 17th Floor, New York, NY 10018, at 11:00 a.m. on December 15, 2014;

> Only Qualified Bidders shall be permitted to bid at the Auction.  37 ARA shall be deemed a Qualified Bidder and all other Qualified Bidders shall be deemed Qualified Competing Bidders.  37 ARA shall provide an initial credit bid of $13,000,000.  In order to be a Qualified Competing Bidder, an Entity shall:

> - submit an all cash offer for the Premises, without financing or due diligence contingencies, of not less than $13,100,000 in cash, plus $150,000 in cash, which amount is the estimate of the total Allowed Receiver, Professional and United States Trustee Claims, plus assumption of all Claims arising from outstanding administrative Claims of the City of New York for, inter alia, water and sewer assessments, real estate taxes, violations and ECB judgments;

> - provide financial information to the Plan Proponents which fairly demonstrates its ability to close on its purchase of the Premises;

> - Submit a deposit in the amount of $1,325,000 (the "Deposit");

- consent to a Closing on the purchase of the Premises on the later of the date the Confirmation Order becomes a Final Order unless the Confirmation Order provides for §363(m) protection or fourteen (14) days after the entry of the Confirmation Order;

- acknowledge that if it becomes the Successful Purchaser, its Deposit shall be deemed to be non-refundable and shall be forfeited if it fails to close for any reason.

- if a Qualified Competing Bidder does not become the Successful Purchaser, its Deposit shall be returned to it within the earlier of (i) three Business Days after the Closing of a sale of the Premises to the Successful Purchaser; or (ii) 30 days after the date of the Auction;

37 ARA shall be permitted to credit bid all or any portion of the 37 Avenue Realty Secured Claim up to the full amount of the 37 Avenue Realty Allowed Class 1 Claim and such credit bid shall be deemed to be a Cash bid;

subsequent bids made at the Auction shall be in minimum increments of $25,000 or such amount as the Debtor deems appropriate;

at such time as it appears to the Debtor's counsel, in the exercise of its reasonable discretion, that none of the Qualified Bidders present at the Auction are prepared to advance the bidding, the Debtor's counsel shall (after giving fair warning, on the record, to those Entities present) close the bidding on the record and the Entity which immediately prior to the close of the bidding shall have submitted the highest or best offer for the purchase of the Premises shall be declared the Successful Purchaser and its bid the "Accepted Bid."  The Debtor shall submit an Order to the Bankruptcy Court confirming the sale to the Successful Purchaser and as part of that Order shall seek approval of granting the Successful Purchaser the protections under §363(m) of the Bankruptcy Code.

<u>Transfer of Assets.</u>  On the Effective Date, the Premises shall be transferred to the

Successful Purchaser, upon the terms and conditions and otherwise in accordance with the Plan.

In connection therewith, the Successful Purchaser shall receive:

a) a deed to the Premises in form and substance acceptable to the Successful Purchaser, executed by the Debtor to be recorded in the appropriate register's office (the "Deed"), free and clear of all Liens, Claims and encumbrances, except as otherwise set forth in the Plan;

b) a bill of sale in form and substance acceptable to the Successful Purchaser, executed by the Debtor, transferring to the Successful Purchaser all personal property used in or useful to the operation and maintenance of the Premises;

c)  assignment in form and substance acceptable to Purchaser, executed by the Debtor in favor of the Successful Purchaser, assigning any Executory Contract which the Successful Purchaser elects in writing [prior to the Confirmation Date] to be so assigned; and

d) an assignment in form and substance acceptable to Successful Purchaser, executed by the Debtor in favor of the Successful Purchaser, assigning all unexpired leases and leases not foreclosed by the State Court Judgment, tenant security deposits, licenses, approvals, permits and similar authorizations, and any pending application for any of the foregoing.

<u>Application of 1146(a) Exemption.</u> The Plan expressly contemplates the refinance or sale

of the Property on or after the Effective Date. The post-Effective Date refinance or sale shall

therefore not be taxed under any law imposing a stamp or similar tax as provided for in Section

1146(a) of the Code including (a) the transfer of the Property; (b) the creation of any mortgage,

deed of trust, lien, pledge or other security interest; (c) the making or assignment of any contract,

Lease or sublease; or (d) the making or delivery of any deed or other instrument or transfer under,

in furtherance of, or in connection with the Plan.  All such transfers, assignments and sales will

not be subject to any stamp tax, or other similar tax held to be a stamp tax or other similar tax by

applicable law.

**D.**      **Resolution Of Disputed Claims & Reserves**

(a)      <u>Objections</u>.  An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest no later than the Confirmation Date.

(b)      <u>Amendment of Claims</u>.  A Claim may be amended after the Effective Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.

(c)      <u>Reserve for Disputed Claims</u>.  The Debtor shall reserve, on account of each holder of a Disputed Claim, that property which would otherwise be distributable to the holder on such date were the Disputed Claim at issue an Allowed Claim at the time of distribution, or such other property as the holder of the Disputed Claim at issue and the Debtor may agree upon.  The property so reserved for the holder, to the extent that the Disputed Claim is Allowed, and only after the Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder as provided below.

(d)      <u>Distributions to Holders of Subsequently Allowed Claims</u>.  Unless another date is agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtor shall, within ten (10) days after an Order resolving the Disputed Claim becomes a Final Order, distribute to such holder with respect to such subsequently Allowed Claim that amount, in cash, from the cash held in reserve for such holder and, to the extent such reserve is insufficient, from any other source of cash otherwise available to the Debtor, equal to that amount of cash which would have been distributed to such holder from the Effective Date through such distribution date had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective Date.  The holder of a subsequently Allowed Claim shall not be entitled to any additional interest

14

on the Allowed Amount of its Claim, regardless of when distribution thereon is made to or received by such holder.

(e)    <u>Disputes Regarding Rights to Payments or Distribution</u>. In the event of any dispute between and among holders of Claims and/ or Interests (including the individual or entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Debtor may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account or to a distribution reserve as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Debtor shall make timely distributions on account of the undisputed portion of a Claim or Interest to such claimants.

(f)    <u>Claims Procedures Not Exclusive</u>. All of the aforementioned Claims procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims which were previously disputed may subsequently be compromised, settled, withdrawn, or otherwise resolved without further order of the Bankruptcy Court.

**E.    Amendment, Modification, Withdrawal or Revocation of the Plan.**

The Debtor reserves the right, in accordance with the Section 1127 of the Bankruptcy Code, to amend or modify the Plan with such Order of the Bankruptcy Court, as may be required.

The Debtor may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

### F.        Unclaimed Property

Except as otherwise provided herein, in the event any claimant fails to claim any distribution within four (4) months from the date of such distribution, such claimant shall forfeit all rights thereto and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their last known address set forth on the most recent proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Disbursing Agent and the Debtor shall use their collective best efforts to obtain current addresses for all claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed cash shall be redistributed by the Disbursing Agent pro rata to the holder of Class 2 Interests.

### G. Plan Injunction

Effective on the Confirmation Date, all persons who have held, hold or may hold Claims or Interests are enjoined from taking any of the following actions against or affecting the Debtor or assets of the Debtor with respect to such Claims, Interests or Administrative Claims, except as otherwise set forth in the Plan, and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:

(i) Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor regarding the Claims or Interests;

(ii) Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor;

(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the assets of the Debtor;

(iv) Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against the Debtor, the assets of the Debtor; and

(v) Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.

**H. Exculpation.** Neither the Debtor nor any of its members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the chapter 11 case or the Plan except with respect to their obligations under the Plan and any related agreement or for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 7.2 or 7.3 of the Plan shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in Sections 7.2 or 7.3 of the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any of the Released Parties referred to herein for any liability whatever, including, without limitation, any claim, suit

17

or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in Section 7.2 of the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein or (b) limit the liability of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

## I.    Full and Final Satisfaction

Pursuant to the Plan, all payments and all distributions shall be in full and final satisfaction, settlement and release of all Claims and Interests, except as otherwise provided in the Plan.

## J.    Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction of the chapter 11 case:

(a)  To determine all controversies relating to or concerning the allowance of and/ or distribution on account of such Claims or Interests upon objection thereto which may be filed by any party in interest;

(b)  To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)  To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(d)  To determine all disputed, contingent or unliquidated Claims and all disputed Interests;

(e)  To determine requests to modify the Plan pursuant to Section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(f)  To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

(g)  To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan;

(h)  To determine any and all pending motions and applications for assumption or rejection of executory contracts and leases and the allowance and classification of any Claims resulting from the rejection of executory contracts and leases;

(i)      To resolve any disputes which may arise concerning the sale or auction of the Property or satisfaction of the 37 ARA Allowed Secured Claim as required under the Plan;

(j)      To determine such other matters as may be provided for in the order of the Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the Bankruptcy Code; and

(h)  To enter a final decree closing this chapter 11 case.

**K.     Post-Confirmation Fees, Final Decree**

The reasonable compensation and out-of-pocket expenses incurred post-Confirmation professional fees shall be paid by the Debtor within ten (10) days upon presentation of invoices

for such post-petition professional services. All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

A final decree shall be entered as soon as practicable after distributions have commenced under the Plan.

### L.     Continuation of Bankruptcy Stays

All stays provided for in the chapter 11 case under Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### M.     Avoidance and Recovery Actions

The Debtor believes, after a thorough investigation and review with its counsel, that there are no causes of action under Sections 544, 547, 548, 550 and 553 of the Bankruptcy Code. As such, the Debtor does not intent to pursue any such cases of action.

### N.     Treatment of Executory Contracts

Unless rejected by a prior order of the Court, in the event that leases, if any, have not been terminated, the leases for the Tenants at the Premises shall be assumed and assigned to the Successful Bidder and the successful bidder shall take subject to the rights and interests of such tenants, if any.

The invalidity of the leases held by tenants Al Yueh Chang, Yu Ying Chen, Mei Di Kui and AC Tower Condominium, Inc, were all expressly determined by the State Court Judgment issued and entered in the State Court Foreclosure Action and, upon sale of the Premises pursuant to the Plan, said leases and the interest of said tenants in the premises pursuant thereto, if any, shall be deemed foreclosed, terminated, and forever extinguished in accordance with the provisions of the State Court Judgment.  The Confirmation Order shall provide that the United

States Marshal or its designee shall be authorized and directed to give assistance to the Successful Bidder if necessary subsequent to the Effective Date to enforce eviction from the Premises and deliver possession to the Successful Purchaser.

Any person or entity whose Claim arises from rejection of an executory contract shall, to the extent such Claim becomes an Allowed Claim, have the rights of a holder of an Unsecured Claim in Class 3 with respect thereto.

Any person or entity who has a Claim against the Debtor by virtue of rejection of an executory contract may file a Claim with the Clerk of the Court, and service such claim upon counsel for the Debtor and 37 ARA, within twenty-five days (25) days following service upon such person or entity of notice of entry of the order confirming the Plan or order authorizing such rejection, whichever is later.  If such Claim is not filed within such specified time, it shall forever be barred from assertion against the Debtor.

## III.    FINANCIAL INFORMATION

**A.      The Debtor's Schedules of Assets and Liabilities**. Schedule have been filed with the Clerk of the Court and may be inspected by all interested parties.

**B.      Chapter 7 Liquidation Analysis.**   Because all creditors are unimpaired, no scenario exists, including but not limited to Chapter 7 liquidation, under which the creditors would be entitled to receive a distribution greater than that which the Debtor has proposed in its Plan.

## IV.  CONFIRMATION PROCEDURE

**A.      Voting.**  As set forth hereinabove and in the Plan, no class of Claim holders or Interests is impaired under the Plan, and accordingly, all such Classes are conclusively presumed to accept the Plan. Therefore, votes will not be solicited.

**B.      Confirmation Hearing.**  The Bankruptcy Code requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan.  The Confirmation hearing has been scheduled for the date set forth on the Court Order which accompanies this Disclosure Statement.  The Confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the Confirmation hearing. At the Confirmation hearing, the Bankruptcy Court will (i) hear and determine any objections to the Plan and to Confirmation of the Plan; (ii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iii) confirm or refuse to confirm the Plan.

**C.      Statutory Requirements for Confirmation of the Plan**

At the confirmation hearing, the Debtor will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If so, the Bankruptcy Court shall enter an order confirming the Plan. The applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

(a)      The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b)      The Debtor must have complied with the applicable provisions of the Bankruptcy Code;

(c)      The Plan has been proposed in good faith and not by any means forbidden by law;

(d)     Any payment made or promised to be made by the Debtor under the Plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the Plan and incident to the chapter 11 case, has been disclosed to the Bankruptcy Court, and any such payment made before Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)     The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy. Since the Plan contemplates a liquidation of the Debtor's Property, the Debtor does not and will not operate or generate income, there shall be no post-Confirmation compensation by the Debtor to the Debtor's existing management.

(f)     <u>Feasibility and "Best Interest" Tests</u>: The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test").

For a plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtor will possess the resources to meet its obligations under the Plan. Since the Plan contemplates a liquidation of the Debtor's assets, Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan. Until such time as the assets of the Debtor are fully liquidated, the Debtor has provided for ample reserves to ensure that there is sufficient cash on hand to satisfy the basic and critical

expenses of the Debtor.

In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired Class requires that each holder of a Claim or Interest in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Because all creditors are unimpaired, no scenario exists, including but not limited to Chapter 7 liquidation, under which the creditors would be entitled to receive a distribution greater than that which the Debtor has proposed in its Plan.

The Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and feasibility requirements. The Plan is "fair and equitable" and "does not discriminate unfairly". The Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code and the Plan has been proposed in good faith.

D.      **Objections to Confirmation.**  Objections to confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector.  Any such objection must be filed with the Bankruptcy Court and served upon the following, with a copy to the Court's chambers, so that it is received by them on or before 4:00 P.M. on the date set forth in the Court Order which accompanies this Disclosure Statement:

DelBello Donnellan Weingarten Wise & Wiederkehr, LLP
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy

Procedure 9014.

## V. ALTERNATIVES TO CONFIRMATION
##    AND CONSUMMATION OF THE PLAN.

If the Plan is not confirmed and consummated, the alternatives include: (i) preparation

and presentation of an alternative plan of reorganization; (ii) liquidation of the Debtor under

Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 case, which would result

in all creditor claims and rights of collection and enforcement being restored in full.

## VI.  POST-CONFIRMATION REPORTS

The Debtor shall be responsible for filing post-Confirmation reports with the Bankruptcy

Court and shall pay all quarterly fees required under 28 U.S.C. § 1930 and 31 U.S.C. §3717, on

behalf of the Debtor, until the earlier of (a) conversion or dismissal of this chapter 11 case or (b)

entry of a final decree closing this chapter 11 case.

## VII.  TAX CONSEQUENCES

A.        **Tax Consequences of Confirmation.**  Confirmation may have federal income tax

consequences for the Debtor and holders of Claims and Interests.   The Debtor has not obtained

and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the

Debtor obtained an opinion of counsel with respect to any tax matters.  Any federal income tax

matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the

regulations promulgated thereunder.  The Debtor, creditors and holders of Interests are urged to

consult their own counsel and tax advisors as to the consequences to them, under federal and

applicable state, local and foreign tax laws, of the Plan.  The following is intended to be a

summary only and not a substitute for careful tax planning with a tax professional.  The federal,

state and local tax consequences of the Plan may be complex in some circumstances and, in some

cases, uncertain.  Accordingly, each holder of a Claim or Interest is strongly urged to consult

with his or her own tax advisor regarding the federal, state and local tax consequences of the

Plan, including but not limited to the receipt of cash under this Plan.

       **B.**        **Tax Consequences to the Debtor.**  The Debtor may not recognize income as a

result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue

Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge

of indebtedness.  However, a taxpayer is required to reduce its "tax attributes" by the amount of

the debt discharged.  Tax attributes are reduced in the following order:  (i) net operating losses;

(ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity

loss and credit carryovers; and (vi) foreign tax credit carryovers.

**VIII.**  **<u>NOTICES</u>**

      All notices and correspondence should be forwarded in writing to:

GOLDEN LAND LLC
142-23 37th Avenue
Flushing, NY 11354
Attn:   Hong Kin Jiang,  Managing Member

with a copy to:

> DELBELLO DONNELLAN WEINGARTEN
> WISE & WIEDERKEHR, LLP
> One North Lexington Avenue
> White Plains, New York 10601
> Attn: Dawn Kirby, Esq.

> If to 37 ARA:

> c/o Klestadt & Winters, LLP
> 570 Seventh Floor
> New York, NY 10018
> Attn: Tracy L. Klestadt, Esq.

## X.  RECOMMENDATION

The Debtor believes that Confirmation of the Plan is preferable to any of the alternatives described above.  The Plan will provide greater recoveries than those available in liquidation to all holders of Claims.  Any other alternative would cause significant delay and uncertainty, as well as substantial additional administrative costs.

Dated: Flushing, New York
        October 8, 2014

GOLDEN LAND, LLC

By: */s/ Hong Kin Jiang*
      Hong Kin Jiang, Managing Member

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtor*

By:_____*/s/ Dawn Kirby*
        Dawn Kirby, Esq.
        One North Lexington Avenue
        White Plains, New York 10601
        (914) 681-0200